UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ROBERT FOGLE AND
DAVID P. WATSON, Individually and
on behalf of all others similarly situated,

                   Plaintiffs,

     -against-

AMERICAN CORADIUS
INTERNATIONAL, LLC,

                   Defendant.
-----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
19-CV-6227 (JMA) (AKT)

FILED
CLERK

3/23/2021 11:00 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES**

David M. Barshay
Jonathan M. Cader
100 Garden City Plaza, Suite 500
Garden City, NY 11530
    *Attorneys for Plaintiffs Robert Fogle and David P. Watson*

Aaron R. Easley
Sessions, Fishman, Nathan & Israel
3 Cross Creek Drive
Flemington, NJ 08822
    *Attorney for Defendant American Coradius International, LLC*

**AZRACK, United States District Judge:**

## I.    BACKGROUND

Plaintiffs Robert Fogle and David P. Watson ("Plaintiffs") bring this action against defendant American Coradius International, LLC ("Defendant") for allegedly violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. (ECF No. 1.)  The claims arise from two debt collection letters Defendant sent to Plaintiffs.

In a letter dated April 26, 2019, Defendant sought to collect an outstanding debt of $8,251.48 from Plaintiff Fogle (the "Fogle Letter"). (ECF No. 1-1.) The front page of the Fogle Letter is reproduced below:



Defendant sent a similar letter to Plaintiff Watson, dated November 5, 2018, to collect a debt of $786.04 (the "Watson Letter"). (ECF No. 1-2.) The front page of the Watson Letter is reproduced below:



Both Letters contained a table in the top-right in which the "Current Creditor" and "Creditor" was listed as "Synchrony Bank," and the "Original Creditor" was listed as "Comenity Capital Bank." The body of the Letters indicated that they were sent "regarding your PayPal Credit account" and that "[t]he servicer of PayPal Credit accounts is Bill Me Later, Inc."

The Letters also contained several addresses. Specifically, a detachable payment slip at the top of each Letter contained three addresses. First, it listed each recipient's mailing address.

3

Second, it contained a Boerne, Texas address in the top-left above a barcode. No description was included with this address. Third, it listed an address for Defendant. Above this address was a barcode with the instruction to "Make Checks Payable to:". Finally, a fourth address was printed at the bottom of each Letter. It described an Amherst, New York address as the "Office Address" and listed hours of operation. This address is the same address printed earlier in the Letter with the instruction to "Make Checks Payable to:"

Both Letters were also consistent in that the first page—using bold, all capital letters—referred recipients to the second page for "**IMPORTANT INFORMATION**." The second page contained certain disclosures under a heading entitled "Important Information," as depicted below:

> **Important Information**
>
> If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:
> 1. Supplemental security income, (SSI);
> 2. Social security;
> 3. Public assistance (welfare);
> 4. Spousal support, maintenance (alimony) or child support;
> 5. Unemployment benefits;
> 6. Disability benefits;
> 7. Workers' compensation benefits;
> 8. Public or private pensions;
> 9. Veterans' benefits;
> 10. Federal student loans, federal student grants, and federal work study funds; and
> 11. Ninety percent of your wages or salary earned in the last sixty days.

The Letters were distinguishable in certain ways, however. The Watson Letter conveyed a settlement offer and instructed the recipient to "contact our office" at a 1-800 number "to discuss this offer further." Unlike the Fogle Letter, the Watson Letter also featured an address in the body of the Letter in Amherst, New York that was preceded by the instruction, "Make your check or money order payable to:" This address in Amherst, New York was the same address listed at the top of the Letters preceded by "Make Checks Payable to:" and described at the bottom of the

4

Letters as the "Office Address." Additionally, unlike the Watson Letter, the Fogle Letter contained a validation notice that instructed Fogle to "notify this office" should he wish to "dispute the validity of this debt or any portion thereof."

On November 5, 2019, Plaintiffs initiated the instant litigation, alleging that both Letters violate the FDCPA for various reasons. (ECF No. 1 at 1.) Plaintiffs initially claim that the Letters do not clearly identify the creditors. They also argue that the Letters do not explain Defendant's relationship to the entities listed or the entities' relationship to one another. (ECF No. 1-1 at 41-63; No. 15 at 2.) Additionally, Plaintiff Fogle challenges two specific components of the Letter he received. First, he contends that the validation notice printed in the Fogle Letter is "overshadowed" by other text. (Id.) He also argues that it is unclear which address should be used to send written disputes because the Letter contains multiple addresses. (Id.)

After appearing for a pre-motion conference before the undersigned, Defendant now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 15.) Plaintiffs oppose Defendant's motion. (ECF No. 16.) For the reasons set forth below, Defendant's motion is **GRANTED** in its entirety.

## II.   DISCUSSION

### A. Standard

#### 1. Rule 12(c)

In resolving a motion for judgment on the pleadings pursuant to Rule 12(c), a court looks to the same standard that applies to resolution of a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). To survive a motion to dismiss, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is

facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice, nor will "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. As it does when reviewing a motion to dismiss, a court considering a motion for judgment on the pleadings must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland., 448 F.3d at 521.

Ordinarily, on a motion to dismiss—and likewise on a motion for judgment on the pleadings—a court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this standard "has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken." Young AE Kim v. Advanced Call Center Technologies, LLC, No. 19-CV-4672, 2020 WL 5893964, at *1 (E.D.N.Y. Oct. 5, 2020) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). In cases brought pursuant to the FDCPA, courts that have broadly interpreted this standard have considered debt collection letters that complaints allege violate the FDCPA. Id.

2. **Section 1692e**

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition includes a materiality requirement that "focuses on whether the false statement would 'frustrate a consumer's ability to intelligently choose his or her response.'" Cohen v. Rosicki, 897 F.3d 75, 86 (2d Cir. 2018) (quoting Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th Cir.

6

2010)). There are sixteen subsections that outline a non-exhaustive list of practices that fall within the prohibited conduct under § 1692e. A catch-all subsection, § 1692e(10), bans "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." Since the list in the subsections is non-exhaustive, "a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). A debt collection letter is deceptive if it is susceptible to more than one reasonable interpretation, at least one of which is inaccurate. See id. at 1319; see also Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012).

### 3. Section 1692g

Section 1692g requires debt collectors to provide consumers with specific information within five days of initiating contact.[1] Debt collectors must send a written notice with "the name of the creditor to whom the debt is owed" and a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(2)-(a)(3).

The thirty-day period referenced in this statement is commonly referred to as the "validation period" and "begins to run upon the debtor's receipt of the initial notice." Arend v.

---

[1] In particular, the required information is:

    (1) the amount of the debt;
    (2) the name of the creditor to whom it is owed;
    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the debt's validity, or any portion of it, the debt will be assumed to be valid by the debt collector;
    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion of it, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g.

Total Recovery Servs., Inc., No. 05-CV-3064, 2006 WL 2064977, at *2 (E.D.N.Y. July 24, 2006). The validation notice is intended "to protect consumers from 'debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid' by 'inform[ing] consumers that they have] certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of the debt.'" Hochhauser v. Grossman & Karaszewski, PLLC, No. 19-CV-2468, 2020 WL 2042390, at *4-5 (E.D.N.Y. Apr. 28, 2020) (quoting Lotito v. Recovery Assocs. Inc., No. 13-CV-5833, 2014 WL 4659464, at *3 (E.D.N.Y. Sept. 17, 2014)) (alterations in original).

A debt collector's written notice violates 1692g if the debt collection letter overshadows or contradicts the consumer's right to dispute the debt. Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996). If the required information is not expressed "clearly and effectively" and leaves the "least sophisticated consumer uncertain" of their rights, then the debt collection letter overshadows or contradicts the consumer's right to dispute the debt. Nunez v. Mercantile, No. 19-CV-2962, 2020 WL 2475619, at *7 (E.D.N.Y May 13, 2020) (quoting Savino v. Comput. Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998)).

4. **Least Sophisticated Consumer**

In evaluating whether a communication violates § 1692e or § 1692g, the Court applies an objective standard by considering how the "least sophisticated consumer" would understand the debt collection letter. Carlin v. Davidson Fink, LLP, 852 F.3d 207, 216 (2d Cir. 2017); Clomon, 988 F.2d at 1318. Though the "least sophisticated consumer" does not have the astuteness of a "Philadelphia lawyer," they are neither "irrational nor a dolt." Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 1996). Additionally, the "least sophisticated consumer" can be expected to possess a "willingness to read a collection notice with some care." Greco v. Trauner,

Cohen & Thomas, LLP, 412 F.3d 360, 363 (2d Cir. 2005). The purpose of the "least sophisticated consumer" standard is to protect "the gullible as well as the shrewd." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008). This objective test protects consumers against deceptive debt collection practices while also protecting debt collectors from liability for "bizarre or idiosyncratic" interpretations of debt collection letters. Clomon, 988 F.2d at 1320. While "courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss." Diaz v. Residential Credit Sols., Inc., 965 F. Supp. 2d 249, 256 (E.D.N.Y. 2013) (quoting Rozier v. Fin. Recovery Sys., No. 10-CV-3273, 2011 WL 2295116, at *2 (E.D.N.Y. June 7, 2011)).

B. Application

Each of Plaintiffs' claims that Defendant violated the FDCPA fails as a matter of law for the reasons explained below.

1. Identity of the Creditor Claim

Plaintiffs first argue that the Letters fail to clearly and explicitly identify the creditor. (ECF No. 1 at 62, 70.) Under the FDCPA, debt collectors must convey the identity of the creditor to whom the recipient of the letter owes a debt. See 15 U.S.C § 1692g(a)(2). Plaintiffs, however, argue that the Letters fail to do so because several entities are listed: Synchrony Bank, Comenity Capital Bank, PayPal Credit, and Bill Me Later, Inc. According to Plaintiffs, the Letters fail "to identify by name and label any entity as current creditor, account owner, or creditor to whom the debt is owed." (ECF No. 1 at 49.) Plaintiffs contend the Letters' purported failure to include this information is unfair, deceptive, and would lead the least sophisticated consumer to derive multiple meanings from the Letters, at least one of which inaccurate. (Id. at 68.)

9

The Court disagrees. The least sophisticated consumer, who is expected to read the Letters with care, would understand that Synchrony Bank is the creditor since it is explicitly labeled as "creditor" or the "current creditor." Recently, another court in this district rejected nearly identical claims brought against Defendant and involving the same debt collection letters at issue here. In Taylor v. American Coradius International, LLC, the plaintiff raised similar arguments regarding confusion as to the identity of the creditor because the letter Defendant sent, as here, contained a table listing the "creditor" and "original creditor" as well as an explanation that "[w]e are writing to you regarding your PayPal Credit account. The servicer of PayPal Credit accounts is Bill Me Later, Inc." No. 19-cv-4890, 2020 WL 4504657, at *3 (E.D.N.Y Aug. 5, 2020). The Taylor court flatly rejected the plaintiff's claim that the letter was confusing because multiple entities were listed. As the court held, "looking at the face of the letter, the Court is hard-pressed to hypothesize how the creditor's identity could be conveyed any more clearly than it is, with a table prominently displaying the word **'Creditor'** in bold type in a box in the center of the page, set apart from the body of the letter, and the identity of the creditor — Synchrony Bank — clearly identified immediately below that designation." Id. at *2 (emphasis in original).

The same analysis applies here, as it is difficult for the Court to conceive of a way Defendant could have made more explicit that Synchrony Bank is the "creditor." The mere presence of the names of other entities does not change this conclusion, particularly because none of those other entities is listed as the "creditor" or "current creditor." Moreover, there is no requirement under the FDCPA "that a debt-collection notice clearly describe every step in the chain of ownership that the debt travels to arrive in the current creditor's possession." Id. at *3. Consequently, Plaintiff's claims regarding identification of the creditor must be dismissed, as

10

Defendant clearly labeled the "creditor" as Synchrony Bank and had no obligation to provide additional information regarding the relationship between the other entities listed.

### 2. Validation Notice

Plaintiff Fogle next disputes the formatting used to print the validation notice in the letter he received. He argues that "the 15 U.S.C. § 1692g rights are positioned in such a way that it discourages the least sophisticated consumer from reading them." (ECF No. 1 at 162.) In particular, he claims that the Letter's instruction, "**NOTICE: PLEASE SEE SECOND PAGE FOR IMPORTANT INFORMATION,**" which is printed in bold-type and all capital letters, "diverts attention away from the validation notice," which is "buried" in the text. (Id. at 147-48.) This argument fails as a matter of law.

A debt collector must clearly convey the validation notice required by § 1692g to the debtor in a manner that is not "overshadowed or contradicted by other language" such that "it would make the least sophisticated consumer uncertain as to her rights." Jacobson, 516 F.3d at 90. A letter is deceitful under § 1692e if it is susceptible to more than one reasonable interpretation, at least one of which is inaccurate. Here, when reading the Fogle Letter in its entirety, the least sophisticated consumer would not overlook the validation notice because of the instruction to turn the page. The least sophisticated consumer, who is expected to read the letter in its entirety, would read the validation notice that is printed clearly on the front page of the letter. Further, the instruction to turn the page in no way contradicts the content of the validation notice or renders the Letter inaccurate.

Plaintiff Fogle's arguments to the contrary are unavailing. First, he contends the Letter should have used "visually conspicuous transitionary language" to direct his attention to the validation notice. (ECF No. 1 at 157.) However, Plaintiff Fogle cites no authority that imposes

11

such a requirement. Indeed, as multiple courts in this district have recognized, the FDCPA does not mandate that every collection letter contain transitional language. See, e.g., Allen v. Advanced Call Ctr. Techs., L.L.C., No. 18-CV-2873, 2019 WL 4887683, at *7 (E.D.N.Y. Sept. 30, 2019) ("The absence of language explicitly directing the reader to the validation notice does not render a letter deficient as a matter of law").

Nor does Plaintiff Fogle cite any authority for the proposition that the least sophisticated consumer would ignore the prior content of the Letter preceding the instruction that says: "**NOTICE: PLEASE SEE SECOND PAGE FOR IMPORTANT INFORMATION**." (ECF No. 1-1 at 1.) Indeed, the standard that applies is the opposite of Plaintiff's contention: the least sophisticated consumer "is charged with reading the entire collection letter and interpreting the various statements in conjunction with one another." Hochhauser, 2020 WL 2042390, at *4-5. And, as several courts have recognized, the least sophisticated consumer's obligation to read the entire letter applies specifically to instructions to turn the page because such a "reminder to look at the reverse side does not suggest that the consumer should ignore the front page of the letter." Id. See also Park v. Forster & Garbus, LLP, No. 19-cv-3621, 2019 WL 5895703 at *7 (E.D.N.Y. Nov 12, 2019) (dismissing claim based on similar instruction to turn the page because instruction did not contradict the "prominently-placed validation notice," but instead highlighted other legally mandated rights on the second page).

Plaintiff Fogle also argues that the validation notice is "printed in diminished font" and overshadowed by the "less important" and "more legible" instruction to see New York disclosures on the second page. (ECF No. 15-2 at 20.) Citing the Webster's Dictionary definition of "prominence," he claims that the validation is not prominent "because it does not stand out or project beyond the surface." (Id. at 14.) This argument was also raised in the plaintiff's challenge

12

to Defendant's nearly identical letter in <u>Taylor</u> and squarely rejected there, too. Indeed, as the <u>Taylor</u> court found, the challenged format "comes nowhere close to overshadowing the validation notice" because the notice appeared in "the same, black font as the surrounding text" and was "legible and uncontradicted." 2020 WL 4504657 at *5. As in many other cases where courts have rejected similar challenges, the validation notice here is "clear enough not to 'make the least sophisticated consumer uncertain as to [their] rights.'" <u>Park</u>, 2019 WL 5895703 at *7 (quoting <u>Delfonce v. Eltman Law</u>, P.C., 712 Fed. App'x 17, 20 (2d Cir. 2017) (alterations in original)). Accordingly, the Court dismisses the "overshadowing" claim.

    **3. Multiple Address Claims**

Finally, Plaintiff Fogle contends that the least sophisticated consumer would be confused as to which address to send written disputes. (ECF No. 1 at 95-98; 121.) The Court disagrees. The least sophisticated consumer would be expected to understand the Letter's instruction to send correspondence to Defendant's "office" using the address clearly labeled "Office Address" throughout the Letter and not an unlabeled address at the top set off from the rest of the Letter.

A debt collection letter violates the FDCPA if it is susceptible to "more than one reasonable interpretation, at least one of which is inaccurate." <u>Clomon</u>, 988 F.2d at 1319. Simply because a debt collection letter includes multiple addresses "does not render it misleading . . . unless it is unclear which address a consumer should contact." <u>Kucur v. Fin. Recovery Servs., Inc.</u>, No. 19-CV-5453, 2020 WL 1821334, at *4 (E.D.N.Y. Apr. 9, 2020) (citing <u>Park</u>, 2019 WL 5895703, at *6). A letter is materially misleading if it "explicitly misdirects consumers . . . to the wrong address." <u>Id.</u> (citing <u>Carbone v. Caliber Home Loans, Inc.</u>, No. 15-CV-4919, 2016 WL 8711197, at *4 (E.D.N.Y. Sept. 30, 2016)).

Here, the Fogle Letter is not misleading, even though it contains multiple addresses.  The address to use for written disputes is clear because the validation notice instructs consumers to send written disputes to "this office."  (ECF No. 1-1.)  "[T]his office" is then defined with the label "Office Address" as: "2420 SWEET HOME RD STE 150, AMHERST, NY, 14228-2244."  (Id.) Plaintiff Fogle, however, says that the least sophisticated consumer might be misled because another address in Boerne, Texas is printed at the top of the page, separated from the rest of the letter and without any label.  The Taylor court, too, rejected this claim as to the two addresses, finding that with respect to the Boerne, Texas address, the letter at issue contained "nothing to associate this address with notice for disputes, or indeed, anything tying that address to [Defendant] at all."  Taylor, 2020 WL 4504657, at *4.  The Court agrees entirely.

Plaintiff Fogle, however, contends that the Court should adopt the reasoning of Pinyuk v. CBE Group, Inc., 17-CV-5753, 2019 WL 1900985 at *7 (E.D.N.Y. Apr. 29, 2019), which he describes as "directly on point and should be considered persuasive for its reasoning."  (ECF No. 15-2 at 24.)  The Pinyuk court granted leave to amend an FDCPA claim involving multiple addresses, finding plausible the argument "that when a least sophisticated consumer receives a collection letter which she does not understand and the letter contains multiple addresses without clear direction as to where to mail a written request, the consumer would end up, as here, not disputing the letter at all because she 'is frightened of calling a collection agency where highly trained aggressive debt collectors answer calls.'"  Id.

The letter at issue in Pinyuk differs markedly from the Fogle Letter.  In particular, the letter in Pinyuk contained an additional address and provided less context as to which address was to be used for which purpose.  Here, the Fogle Letter contains only two potential addresses, one of which is clearly labeled as the "Office Address."  In addition, the undersigned recently considered the

14

same letter that was challenged in Pinyuk and found that it did not violate the FDCPA. In Cantave v. The CBE Group, Inc., this Court held that the same letters that were at issue in Pinyuk were not misleading, even though they contained multiple addresses. No. 19-CV-5796, 2021 WL 950410, at *5 (E.D.N.Y. Mar. 12, 2021). In particular, this Court reasoned that "the least sophisticated consumer would send a dispute or inquiry to the only address explicitly labeled 'mailing address' and printed in closest proximity to the validation language." Id. That same rationale applies to the instant situation. The least sophisticated consumer, instructed to contact "this office" for disputes, would understand to use the address clearly labeled "Office Address." Accordingly, Plaintiff Fogle's claims based on multiple addresses fail as a matter of law.

### III.   CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is hereby **GRANTED**, and Plaintiffs' complaint is dismissed in its entirety. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: March 23, 2021
      Central Islip, New York

                                                                           /s/ (JMA)
                                                                           JOAN M. AZRACK
                                                                           UNITED STATES DISTRICT JUDGE